LAW OFFICE OF JAY A. NELSON
JAY A. NELSON, No. 258431
818 SW 3rd Avenue, No. 221-3534
Portland, OR 97204
Telephone: 971.319.3099
jay@jayanelson.com

Attorney for Defendant
JOHN GERINGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Appellee,<br><br>    v.<br><br>JOHN GERINGER,<br><br>    Defendant/Appellant. | USDC Case No. 12 Cr. 888 EJD<br><br>USCA Case No. 15-10353<br><br>NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATION OF COUNSEL IN SUPPORT<br><br>Before the Honorable Edward J. Davila<br>United States District Judge |

| 1 | TO: | BRIAN STRETCH, ACTING UNITED STATES ATTORNEY, and JEFF SCHENK, ASSISTANT UNITED STATES ATTORNEY: |

PLEASE TAKE NOTICE that Defendant/Appellant John Geringer, by and through his counsel, hereby moves this Court for an Order granting him bail pending appeal.

## MOTION

Pursuant to 18 U.S.C. § 3143(b) and Federal Rule of Criminal Procedure 46(c), Defendant/Appellant John Geringer, by and through his counsel, respectfully moves this Court for an Order granting him bail pending appeal. This motion is based on the instant motion and notice of motion, the attached Memorandum of Points and Authorities and Declaration of Jay A. Nelson ("Nelson Decl."), and any other materials that may come to the Court's attention at the time of the hearing on this motion, if any. Although Mr. Geringer does not request a hearing, counsel will appear should the Court so direct. As set forth in the attached declaration, the United States opposes this motion.

Respectfully submitted,

DATED: March 23, 2016         LAW OFFICE OF JAY A. NELSON

/s/ Jay A. Nelson
JAY A. NELSON
818 SW 3rd Avenue, No. 221-3534
Portland, OR 97204

Attorney for Defendant/Appellant
JOHN GERINGER

# MEMORANDUM OF POINTS AND AUTHORITIES

**A.     Legal standard for bail pending appeal.**

18 U.S.C. § 3143(b)(1) provides that the Court shall grant bail pending appeal upon entry of the following findings:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

As used in section 3143, the term "'substantial' defines the *level of merit* required in the question presented[,]" and the phrase "likely to result in" refers to the "*type of question* that must be presented." *See United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985) (original emphases). A "substantial question" means one that is "fairly debatable" or "fairly doubtful[.]" *Id.* at 1283. Thus, "a substantial question is one of more substance than would be necessary to a finding that it was not frivolous[,]" but it is also "very different from a showing that reversal is more likely than not." *Id.* at 1281, 1283 (quotation marks omitted).

**B.     Mr. Geringer merits bail pending appeal.**

For the reasons that follow, this Court should grant Mr. Geringer bail pending appeal.[1]

**1.     Mr. Geringer presents neither a flight risk nor danger.**

To begin, Mr. Geringer easily satisfies section 3143(b)(1)(A). This Court has observed first-hand that Mr. Geringer will comply with the conditions of his release, will not flee, and will not pose a danger to any person. *See* 18 U.S.C. § 3143(b)(1)(A).

---

[1] Mr. Geringer notes that under Criminal Local Rule 46-1, "Magistrate Judges shall hear and determine all motions to release or detain *except as otherwise ordered by the Court*." Crim. L. R. 46-1 (emphases added). Given this Court's familiarity with Mr. Geringer and the substantial questions he presents on appeal, *see infra* Section B.2, Mr. Geringer contends it would serve the interest of judicial economy for this Court, rather than a Magistrate Judge, to decide this motion, and he therefore asks the Court to so order.

At his January 17, 2013 initial appearance, the Court released Mr. Geringer on a $1,000,000 unsecured bond. ECF No. 4.[2] Approximately one month later, the Court secured the bond with $250,000 in equity from the home of Mr. Geringer's parents. ECF No. 24. Thereafter, the Court permitted Mr. Geringer to remain on bond through his June 4, 2014 change of plea hearing, and his June 25, 2015 sentencing hearing. ECF Nos. 82, 172. In between those two events, the Court imposed a 130-month custodial sentence upon co-defendant Christopher Luck, and Mr. Geringer continued to comply with the conditions of his release. ECF No. 129. Even after the Court imposed sentence of 145 months in custody, $50,327,484.04 in restitution, and $50,327,484.04 in forfeiture upon Mr. Geringer, *see* ECF No. 173, the Court continued to trust him on bond until he timely surrendered to the Bureau of Prisons on September 17, 2015. ECF No. 196. All told, Mr. Geringer faithfully complied with the conditions of his release for approximately two years and eight months.

This release record—exemplary by any standard—establishes by clear and convincing evidence that Mr. Geringer is not likely to flee or pose a danger to the safety of any person or the community, and that he thus satisfies the requirements of 18 U.S.C. § 3143(b)(1)(A).[3]

////

////

////

---

[2] As used herein, "ECF No." refers to this Court's docket, and "Dkt." to the docket report in Mr. Geringer's direct appeal, Ninth Circuit Case No. 15-10353.

[3] This conclusion is unaffected by the fact, as set forth in the attached declaration, that it no longer appears viable to secure a bond with equity from Mr. Geringer's parents' home. *See* Nelson Decl. ¶ 2. Mr. Geringer's record on release establishes that it is unnecessary to secure a bond with property at all, much less $250,000. Indeed, section 3143 does not require bail pending appeal on the same terms and conditions as pretrial release, and this Court should similarly reject any such rigidity. Accordingly, Mr. Geringer asks the Court to release him on the same terms and conditions as before, minus the requirement that his parents post equity from their home. At a minimum, the Court should grant bail pending appeal subject to the "least restrictive" alternative conditions which the Court finds reasonably necessary to satisfy the Bail Reform Act's twin concerns—flight risk and danger—neither of which exists here. *See* 18 U.S.C. § 3142(c)(1)(B).

**2. Mr. Geringer has raised substantial questions on appeal which, if successful, are likely to result in a reduced sentence shorter than the expected duration of the appeal process.**

Mr. Geringer also satisfies section 3143(b)(1)(B)(iv). To begin, Mr. Geringer has not appealed "for the purpose of delay[.]" 18 U.S.C. § 3143(b)(1)(B). To the contrary, he did not file this motion for bail pending appeal until after he filed his opening brief on appeal, *see* Dkt. 13, and he has been dutifully serving his custodial sentence since September 17, 2015. ECF No. 206. Nor did Mr. Geringer move for bail pending appeal until after the Ninth Circuit (i) denied the government's motion to dismiss his appeal based on his plea agreement, and (ii) established a new time schedule for appellate briefing. Dkt. 26.

Equally important, Mr. Geringer has raised a "substantial question" within the meaning of section 3143. Specifically, Mr. Geringer has raised substantial challenges to this Court's determination of "loss" under the United States Sentencing Guidelines. *See* Dkt. 13. Because these meritorious claims, if accepted by the Court of Appeals in whole or in part, are likely to result in "a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process[,]" 18 U.S.C. § 3143(b)(1)(B)(iv), they support bail pending appeal.

*First*, Mr. Geringer contends he merits a loss offset for the value of the GLR Growth Fund ("the Fund"), whether considered at the time the offense was discovered in 2012 or at the time of sentencing in 2015. Dkt. 13 at 22-29. In support of this contention, Mr. Geringer relies on the settled "rule that the victim's loss should be offset by the victim's benefit." *United States v. West Coast Aluminum Heat Treating Co.*, 265 F.3d 986, 992 (9th Cir. 2001). This principle—the "victim benefit" rule—finds expression in a wide variety of contexts, including, *inter alia*:

- False certification cases in which the government receives a "partial benefit" under otherwise fraudulently-obtained contracts. *See id.*;
- Pump-and-dump cases in which the stock at issue continues "to have some value after the fraud [comes] to light." *United States v. Zolp*, 479 F.3d 715, 720 (9th Cir. 2007);
- Product substitution cases in which the products at issue still have a market value for resale. *United States v. Silver*, 245 F.3d 1075, 1080-82 (9th Cir. 2001);

3

| | |
|---|---|
| 1 | • Government contracts cases in which the government "receive[s] significant value from the contracts . . . because [the defendant] fully perform[s]." *United States v. Martin*, 796 F.3d 1101, 1109-10 (9th Cir. 2015); |
| 2 | |
| 3 | • Equity skimming cases in which "renter-victims cannot be said to have lost all of the rental money they paid . . . if they obtained commensurate value for their payments[.]" *United States v. Harper*, 32 F.3d 1387, 1392 (9th Cir. 1994); |
| 4 | |
| 5 | • Mortgage fraud cases in which the property that served as collateral retains a fair market value. *United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014); |
| 6 | |
| 7 | • Fraudulent condominium-conversion cases in which "[t]he converted 'condominiums'" purchased by the victims "were not completely worthless at the time of purchase, even though the buyers did not get that for which they bargained." *United States v. Crandall*, 525 F.3d 907, 913 (9th Cir. 2008); and |
| 8 | |
| 9 | • Securities fraud cases in which the investments are fraudulently induced, but "the securities the investors receive[] in exchange for their contributions" are not "entirely without value" because they "obtain an interest in a [real] company"—even if those securities are illiquid. *United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008). |

Although this Court declined to offset the loss amount for the value of the Fund—$49,682,655 at the time of discovery, and quite possibly more by the time of sentencing, *see generally* ECF No. 163—the foregoing authorities establish, at a minimum, that Mr. Geringer's claim for relief finds a deep well of support in Circuit precedent, and is thus "substantial" within the meaning of section 3143.

Mr. Geringer also contends his offense conduct did not "cause" certain losses attributed to him. Dkt. 13 at 32-35. The Guidelines define "actual loss" as "reasonably foreseeable pecuniary harm that *resulted from the offense*." U.S.S.G. § 2B1.1, cmt. n.3(A)(i) (emphases added).[4] On appeal, Mr. Geringer has identified two categories of "loss" which he contends his offense conduct did not cause, and which therefore do not qualify as loss under the Guidelines.

The first is loss suffered due to market forces rather than Mr. Geringer's offense conduct, which the United States has dubbed the "diversification myth[.]" *See* ECF No. 162 at 9 of 13. As the Tenth Circuit has explained, "if the impact of unrelated twists and turns of the market is ignored in the sentencing calculus then [a] . . . defendant is likely to suffer a sentence that is

---

[4]Unless otherwise noted, Mr. Geringer refers to the 2014 edition of the Guidelines Manual. *Accord* Presentence Investigation Report ("PSR") ¶ 40.

4

detached from his or her individual criminal conduct and circumstances." *United States v. Nacchio*, 573 F.3d 1062, 1081 (10th Cir. 2009). "Therefore, from a policy perspective, it makes sense to adopt a sentencing approach that is focused on a defendant's criminally culpable conduct and has the effect of excising . . . unrelated market forces from the sentencing calculus, thereby narrowing the zone of unpredictability in sentencing." *Id.* at 1082.

In this case, the PSR reports that from 2004 through 2009, the Fund invested approximately $13.3 million into broker accounts, but only withdrew or received payments back in the amount of approximately $6.3 million, thus totaling a difference of $7 million. PSR ¶ 19. Because at least some portion of these stock market losses motivated Mr. Geringer to commence his offense conduct to begin with—*i.e.*, to divert greater portions of the Fund's assets away from stocks and into direct private investments—those losses necessarily predate the fraud, and thus cannot have "resulted from" it. U.S.S.G. § 2B1.1, cmt. n.3(A)(i). Nor is the remainder of the $7 million lost on the stock market attributable to the "diversification myth:" the Fund's limited partners wanted those investments—and got them, for a time—but regrettably the Fund's trading accounts did not fare well.

Mr. Geringer further contends he should not be held accountable for $26.4 million in alleged private investment losses. *Compare* Dkt. 13 at 34-35 *with* PSR ¶ 18. Instead, he contends his loss amount should reflect that approximately 25% of the limited partners' investments were always intended for direct company investments, because that percentage reflects the degree of private investment risk the limited partners not only agreed to assume, but no doubt wanted given their potential for comparatively high rates of return. In other words, to the extent the limited partners lost money due to the "diversification myth," 25% of their losses did not result from Mr. Geringer's offense conduct. *See* U.S.S.G. § 2B1.1, cmt. n.3(A)(i). Accordingly, even accepting *arguendo* the government's gross contribution figure of $87,908,048.37, *see* ECF No. 162 at 6 of 13, that amount should, at a minimum, be reduced by 25% to $65,931,036.28, which constitutes the total percentage of contributions (75%) which the limited partners intended for the stock market. After subtracting the dollar value of cash distributions paid back ($39,343,725.37), and adding in the profiting investors' gains

($1,583,527.97) pursuant to U.S.S.G. § 2B1.1, cmt. n.3(F)(iv), *see* ECF No. 233 at Tab A, the loss amount under this mode of analysis—standing alone, and with no other credits or offsets—is $28,170,838.88.[5]

If Mr. Geringer prevails on the foregoing arguments—alone or in combination—they will result in a hefty swing in his Guidelines calculation, as illustrated by the following example. Recall that by subtracting the Fund's gross distributions from the limited partners' gross contributions, this Court adopted a loss amount of $50,327,484.04.[6] *See* ECF No. 173. Based on that figure, the Court calculated Mr. Geringer's Guidelines as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) | |
| Loss Enhancement: | +24 | U.S.S.G. § 2B1.1(b)(1)(M) (loss greater than $50,000,000) | |
| Victim Enhancement: | +4 | U.S.S.G. § 2B1.1(b)(2)(B) (50 or more victims) | |
| Securities Enhancement: | +4 | U.S.S.G. § 2B1.1(b)(19)(A)(ii)-(iii) | |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) | |
| Substantial Assistance: | -2 | U.S.S.G. § 5K1.1 | |
| Total Offense Level: | 34 | | |
| Criminal History Category: | I | | |
| Advisory Guidelines Range: | 151-188 months | | |

Reducing the Court's loss amount by the $7 million in stock market losses which Mr. Geringer contends his offense conduct did not cause, the loss amount becomes $43,327,484.04. Offsetting that amount further by the Fund's $49,682,655 value in 2012—as established by the court-appointed special master, *see* ECF No. 164-3 at 1 of 27—the applicable loss amount becomes -$6,355,170.96. Moreover, because "victims" under the Guidelines must suffer loss, a

---

[5]Mr. Geringer has also asked the Ninth Circuit to apply the Sentencing Commission's favorable 2015 amendments to the section 2B1.1 loss table. Dkt. 13 at 36-39.

[6]On appeal, Mr. Geringer contests additional arithmetic and legal errors in this figure, which present greater relevance on appeal than for purposes of this motion. *See* Dkt. 13 at 13-14, 36-40 & n.10.

loss amount of zero vitiates application of the +4 enhancement for number of victims. *See United States v. Brown*, 771 F.3d 1149, 1162 (9th Cir. 2014). The result—leaving the remainder of the Court's calculation intact—is an Adjusted Offense Level 7, Criminal History Category I, and an advisory Guidelines range of only 0-6 months.[7]

Mr. Geringer reported to prison on September 17, 2015, six months and six days ago. ECF No. 206. He filed his opening brief on January 11, 2016. Dkt. 13. The government moved to dismiss his appeal on February 8, 2016. A motions panel of the Ninth Circuit denied the government's motion without prejudice on March 17, 2016, and established a deadline of April 18, 2016 for the United States to file its answering brief on appeal, which the Court has now extended to May 18, 2016. Dkt. 26-28. Assuming *arguendo* that the parties complete appellate briefing by June 2016, they could then expect oral argument to be scheduled (roughly) in October or November 2016, followed by a decision within three months to a year thereafter. *See* https://www.ca9.uscourts.gov/content/faq.php (in criminal appeals, oral argument is held "approximately 4-5 months after briefing is complete[,]" and "most cases are decided within 3 months to a year"). Then, the losing party would be entitled to pursue relief through such remedies as panel rehearing, rehearing *en banc*, and/or Supreme Court review. All told, Mr. Geringer's direct appeal is now all but certain to last well into 2017.

Considering the possibility of a 0-6 month Guidelines range—and with more than six months of custody already under his belt—Mr. Geringer satisfies the requirement of section 3143(b)(1)(B)(iv) that he raise a substantial question on appeal likely to result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Although an advisory Guidelines range does not present a dispositive prediction of what sentence Mr. Geringer *will* receive upon any vacatur and remand, it does present a strong indication of what sentence is "likely" if he prevails on appeal. That is particularly true given that only about 2% of all sentences—both nationally and in this

---

[7] At these levels, Mr. Geringer would lose the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

7

District—exceed the Guidelines, *see United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2014, Northern District of California* at 11,[8] and because "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Treadwell*, 593 F.3d 990, 1015 (9th Cir. 2010) (quotation marks omitted). For these reasons, Mr. Geringer respectfully asks the Court to grant him bail pending appeal. *See United States v. Tyler*, 324 F. Supp. 2d 69 (D. Me. 2004) (granting release under section 3143(b)(1)(B)(iv) where the disputed Guidelines "enhancement raised the guideline range of sentence from 0–6 months"); *United States v. Baum*, 785 F. Supp. 570 (E.D. Va. 2006) (granting release under section 3143(b)(1)(B)(iv) where the defendant's "appeal of the court's calculation of loss at sentencing raise[d] a substantial question of law likely to result in remand for resentencing[,]" and because success on appeal would result in a "likely six-month sentence" on remand).

Respectfully submitted,

DATED: March 23, 2016  LAW OFFICE OF JAY A. NELSON

*/s/ Jay A. Nelson*
JAY A. NELSON
818 SW 3rd Avenue, No. 221-3534
Portland, OR 97204

Attorney for Defendant
JOHN GERINGER

---

[8] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2014/can14.pdf.

# DECLARATION OF JAY A. NELSON

I, Jay A. Nelson, declare under penalty of perjury as follows:

1. I serve as counsel to Defendant/Appellant John Geringer in the above-captioned matter. I am admitted to practice before this Court, and except as where otherwise expressly noted, I state the following on personal knowledge, and if called as a witness could testify competently thereto.

2. I have addressed Mr. Geringer's motion for bail pending appeal with his parents, Glen and Arlene Geringer ("the Geringers"). The Geringers informed me that Mr. Geringer is welcome live with them if the Court releases him on bail pending appeal, but it is no longer a viable option to secure a bond with equity from their home.

3. I have addressed Mr. Geringer's motion for bail pending appeal with counsel for the government, Assistant United States Attorney Jeff Schenk. Mr. Schenk informed me that the government "will oppose" this motion.

I declare under penalty of perjury of the laws of the United States that the forgoing is true and correct.

DATED: March 23, 2016

*/s/ Jay A. Nelson*
JAY A. NELSON

## PROOF OF SERVICE

I, Jay A. Nelson, certify that on March 23, 2016, I served all parties in this matter by filing the foregoing pleading electronically, as set forth by Local Rule 5-1.

Dated: March 23, 2016
*/s/ Jay A. Nelson*
JAY A. NELSON